*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ELY/GRANT, Minors.

UNPUBLISHED
August 13, 2025
2:20 PM

No. 373034
Hillsdale Circuit Court
Family Division
LC No. 22-000760-NA

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the three minor children under MCL 712A.19b(3)(c)(*i*) (failure to rectify barriers to reunification in a reasonable time), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if children returned to parent). On appeal, respondent challenges the trial court's best-interest findings for only one of the children, AE.[1] We affirm.

## I. BACKGROUND

On October 17, 2022, Children's Protective Services (CPS) received a referral alleging that AE had a substantial red mark "from his cheek to his chin." A police officer arranged an ambulance to take respondent and the three children to the emergency room. In the hospital, all three children were diagnosed with staph infections that caused lesions on their faces. AE's infection was more severe because his was "with cellulitus." CPS conducted a home assessment, which revealed "gnats, many dirty dishes, old peanut butter and jelly sandwiches on the floor, overflowing trash, food in the carpet, and laundry spread out through the living room floor and walkway through the kitchen." Respondent refused to allow CPS to view the upstairs where the children's rooms were located on account of the space being messy. CPS gave respondent multiple opportunities to clean the home, but at an unannounced visit on November 9, 2022, CPS found the home to be in the same unsanitary condition. Also, one of the children was struggling to stand

---

[1] The trial court also terminated the parental rights of AE's unknown father.

from his illness, and all of the children exhibited a strong body odor. Consequently, on November 10, 2022, CPS petitioned to have the children removed from respondent's care and placed under the trial court's jurisdiction. The petition detailed respondent's lengthy history with CPS dating back to 2015 involving respondent's mental health issues; cleanliness and safety issues surrounding the homes she was keeping the children in; domestic violence; and medical neglect. The petition also alleged that respondent had slapped AE on October 17, 2022, and that AE's face had a bruise/red mark on the right cheek.

On the same date the petition was filed, the trial court held an emergency-removal and preliminary hearing. Respondent acknowledged that she did not provide for the children's medical needs properly and that her home was not adequate; however, she offered explanations and excuses for each admission instead of taking responsibility for the circumstances that prompted removal. Respondent denied the allegation that she slapped AE on his face. The trial court found that removal was supported, ordered that the children be placed with the Department of Health and Human Services (DHHS), and ordered that parenting time be set at the DHHS's discretion.

From December 2022 to September 2024, the trial court held numerous dispositional reviews. Respondent's barriers to reunification were primarily that she lacked adequate housing, stable employment, and parenting skills. Her mental health was noted as a barrier if she did not consistently take her medications and work with her therapist. Respondent exhibited a pattern of making some progress in housing and employment then returning to homelessness and unemployment. She gained and lost many jobs throughout the duration of the reviewing periods. Respondent also secured housing but then was evicted. After her eviction, she stayed at various shelters. Respondent engaged with mental-health services, but she continued to struggle at times with emotional regulation and anger.

Regarding parenting time, respondent completed parenting-education classes and demonstrated improvement; however, by October 2024, there were still concerns that she failed to retain the skills that she had learned to provide proper care. Respondent was evaluated for a potential cognitive impairment, but the licensed psychologist who evaluated respondent reported that she had no impairments that hindered her ability to engage with services. In light of respondent's persistent issues with parenting skills and her inability to maintain adequate housing, employment, and mental health, the trial court terminated her parental rights to all three children on October 7, 2024.

This appeal regarding AE followed.

## II. BEST INTERESTS

On appeal, respondent only challenges the trial court's best-interests determination. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error a trial court's decision that termination is in a child's best interests. *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*.

A trial court considers several factors to determine whether termination of parental rights is in a child's best interests, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . ." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015) (quotation marks and citation omitted). The child's bond with the parent is only one factor that a trial court must weigh when deciding whether termination is in a child's best interests, and it does not necessarily outweigh other factors. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's wellbeing while in care, and the possibility of adoption." *In re Rippy*, 330 Mich App 350, 360-361; 948 NW2d 131 (2019) (quotation marks and citations omitted). Additionally, "the trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012).

In the present case, the trial court made the following findings regarding AE's best interests:

> [AE] is eight. He is in a home where his special needs are understood and are met appropriately every single day. He has indicated to the . . . [LGAL] that he would like to continue to see [respondent]. He has never expressed a desire to go back home to [respondent]. I think that is significant. He hasn't even asked for more visitation with [respondent]. Whatever he's getting is enough, sufficient.

> He is up to date medically. He is functioning well in school and at home. He is in a loving home. They are bonded. It is in his best interest for that to continue. He feels safe there. He's settled there. He knows it to be his home, and he knows the [foster family] to be and to provide him his safe place. And this is so despite the fact that there is and remains a bond with [respondent].

> * * *

> With regard to all of the boys, it is in their best right (sic) to have parental rights terminated. If they were to be returned to [respondent], they would not even have proper housing, one of the most basic of things. An unstable life would continue, at least at this point in time, and there would be inconsistency swirling throughout.

First, these statements indicate that the trial court considered AE's best interests individually. See *id*. AE has special needs involving his diagnoses for autism, post-traumatic stress disorder, and attention-deficit hyperactivity disorder. Second, the trial court acknowledged AE's bond with respondent, but noted that this bond was not outweighed by the fact that respondent lacked housing, employment stability, and the parental capacity to provide for AE's basic needs, let alone special needs, after two years. See *In re Gonzales/Martinez*, 310 Mich App at 434; see also *In re White*, 303 Mich App at 701. The trial court found that respondent had recently addressed her transportation issues by living in a city that provided a consistent bus system, but the court still expressed concern over transportation for AE "if there was an emergency." The court also acknowledged that respondent had her own trauma that she had to deal with in individual

counseling and through the use of approximately 10 different medications for her mental health. The trial court thus found that respondent struggled to take care of herself, much less demonstrate that could care for AE's special needs.

In contrast, AE's placement—although not firmly determined to be permanent at the time of trial—was providing him with stability and consistency. CPS reported that AE was doing well in his placement where his special and medical needs were being addressed by his foster parents and through services at his school, including speech and sensory therapy. Given respondent's inability to maintain employment, secure appropriate housing, and to consistently demonstrate the parenting skills necessary to care for AE, the trial court did not clearly err by finding that it was in AE's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace